Tom Buchele, OSB # 081560
Earthrise Law Center
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
Tel: (503) 768-6736
Fax: (503) 768-6642
Email: tbuchele@lclark.edu

Attorney for Plaintiff League of Wilderness Defenders/Blue Mountains Biodiversity Project

Jennifer Schemm, OSB # 970086
Attorney at Law
602 O Ave.
La Grande, Oregon 97850
Tel: (541) 962-0896
Fax: (541) 962-7831
Email: jschemm@eoni.com

Attorney for Plaintiff Hells Canyon Preservation Council

IN THE UNITED STATES DISTRICT COURT

FOR DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **LEAGUE OF WILDERNESS DEFENDERS/BLUE MOUNTAINS BIODIVERSITY PROJECT**, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>**KENT P. CONNAUGHTON**, et al.,<br><br>Defendants,<br><br>and<br><br>**AMERICAN FOREST RESOURCE COUNCIL,** et al.,<br><br>Defendants-Intervenors. | Case No. 3:12-CV-02271-HZ<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXTRA-RECORD DECLARATIONS** |

1 –MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXTRA-RECORD DECLARATIONS

## INTRODUCTION

The Declaration of Robyn L. Darbyshire (Dkt No. 48), the Declaration of Joshua P. White (Dkt No. 49), and Paragraphs 10-15 of the Declaration of Steven B. Hawkins (Dkt No. 47) (collectively "Defendants' extra-record evidence") should be stricken from the record. This evidence does not fit any exception to the rule limiting judicial review to the administrative record in existence at the time Defendants decided to implement Alternative 3 from the final environmental impact statement ("FEIS") for the Snow Basin Vegetation Management Project ("Project").

## ARGUMENT

Defendants ask only that the above declarations be considered in the event the Court considers the Declaration of David Mildrexler, Paragraphs 13-22 (Dkt No. 40), and Exhibits C and E of the Declaration of Jennifer Schemm (Dkt No. 34) ("Plaintiffs' extra-record evidence"). See Dkt No. 57-1, USFS Opp. at p.23 n.10, p.26 n.11. As such, if *Plaintiffs'* extra-record evidence is *not* considered by the court, neither should the Declarations of White, Darbyshire, or Hawkins, Paragraphs 10-15, be considered.

In the event this Court finds Plaintiffs' extra-record evidence fits one of the exceptions to the rule limiting review to the administrative record, it still should not consider Defendants' extra-record evidence. As discussed below, this evidence is impermissible *post hoc* rationalizations as to why the USFS failed to consider the cumulative impacts of grazing and the effects of the Project on the forest's carbon stores and its ability to mitigate climate change.

////

////

2 –MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXTRA-RECORD DECLARATIONS

I. **The Record Review Standard Applies to this Case.**

Plaintiffs are seeking review of claims brought under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, the National Forest Management Act ("NFMA"), 16 U.S.C. 1600 *et seq.*, and the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq*. The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, provides the standard of review for NEPA and NFMA claims. 5 U.S.C. § 702; *ONRC Action v. BLM*, 150 F.3d 1132, 1135 (9th Cir. 1998). Plaintiffs' ESA claims, including those brought under the citizen suit provision, 16 U.S.C. § 1540(g)(1)(A), are also subject to the APA standard of review. *Karuk Tribe of Cal. v. USFS*, 681 F.3d 1006, 1017 (9th Cir. 2012) (en banc).

Review of these types of claims is generally limited to the administrative record. *Lands Council v. Powell*, 395 F.3d 1019, 1029 (9th Cir. 2004)("the Supreme Court has expressed a general rule that courts reviewing an agency decision are limited to the administrative record.") (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)). There are, however, four narrow exceptions that allow supplementation of the administrative record: "(1) if admission is necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) if 'the agency has relied on documents not in the record,' (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter,' or (4) 'when plaintiffs make a showing of agency bad faith.'" *Id.* at 1030 (citing *Sw. Ctr. for Biological Diversity v. USFS*, 100 F.3d 1443, 1450 (9th Cir. 1996)).

3 –MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXTRA-RECORD DECLARATIONS

## II. Defendants' Extra-Record Evidence Should Be Stricken.

Defendants state the court should consider their extra-record evidence because it "rebut[s]" Plaintiffs' arguments and assertions made in their motion for preliminary injunction. USFS Opp., p. 23 n.10, p.26, n.11. The fact that it rebuts Plaintiffs' assertions does not make it per se admissible. It does not qualify as one of the four exceptions and is instead impermissible *post hoc* rationalizations for the USFS' decision not to consider the cumulative impacts of grazing and the effects of the Project on the forest's carbon stores and its ability to mitigate climate change. The rule barring post-decisional rationalizations "operates where an agency has provided a particular justification for a determination at the time the determination is made, but provides a different justification for that same determination when it is later reviewed by another body," i.e., this court. *Independence Min. Co. v. Babbitt*, 105 F.3d 502, 511 (9th Cir. 1997).

### A. The White Declaration and Paragraphs 10-15 of the Hawkins Declaration Are Impermissible Post Hoc Rationalizations.

The White and Hawkins Declarations offer impermissible *post hoc* rationalizations for why the USFS adequately discussed the cumulative impacts of grazing in the FEIS. In comments on the draft EIS, Plaintiffs and others asked the USFS to address these impacts in the FEIS:

> When forest health is the objective, the Forest Service really needs to address the role of livestock. Grazing reduces the density and vigor of grasses and forbs which usually outcompete tree seedlings, often leading to establishment of shade-tolerant trees in areas where the FS would prefer open grown pine. Livestock also decrease the abundance of fine fuels which are necessary to carry periodic, low intensity surface fires. This reduces the frequency of fires, but increases their severity. See Belsky et al. 1997 and Wuerthner.
> ****

4 –MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXTRA-RECORD DECLARATIONS

> …. The NEPA document must disclose how livestock grazing interacts with the so-called forest restoration projects. The goal of restoration is a more open stand, and the agency wants more grass and forbs and fewer conifers, but grazing in those "restored" stands will cause the opposite effect – more conifers and less grass and forbs – thereby conflicting with the restoration objectives.

The USFS responded that it had done so. AR12718-19. The FEIS's discussion on this issue, in its entirety, is as follows: "livestock grazing would continue to reduce fuel loading in fine herbaceous fuels and can limit fire spread rates." AR12250. The agency must rely on this statement as evidence it complied with NEPA's duty to disclose and analyze the cumulative impacts of grazing.

It cannot offer a different, *post hoc* explanation as evidence it considered these cumulative impacts. Yet that is exactly what the White and Hawkins Declarations attempt to do: persuade the Court that the agency did, in fact, adequately consider these effects. The declarants assure the Court that grazing is well managed in accordance with the Forest Plan standards and will not prevent the USFS from effectively prescribed burning, and otherwise restoring, the project area.

The court should reject these *post hoc* justifications. Whether the USFS adequately discussed the cumulative impacts grazing may have with the Project must be determined by looking at the FEIS analysis. *Lands Council*, 395 F.3d at 1029 (unless an exception applies, courts reviewing an agency decision must limit the review to the administrative record). The White Declaration and the Hawkins Declaration, paragraphs 10-15, should be stricken.

B. The Darbyshire Declaration is an Impermissible Post Hoc Rationalization.

The Darbyshire Declaration offers *post hoc* rationalizations as to why the USFS did not address the effects of logging projects on a forest's carbon store. Plaintiffs had

5 –MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXTRA-RECORD DECLARATIONS

included pages of comments on the draft EIS pertaining to the importance of considering the forest's carbon stores, particularly those found in the large trees and old growth stands. AR08633-35, AR08692-709.  HCPC stated "[i]t is particularly concerning that an analysis that claims to respond to climate change issues could be so completely devoid of an analysis of carbon storage." AR08633.  Plaintiffs discussed and referenced approximately 14 articles related to carbon sequestration and logging practices. AR08646-53.

Nevertheless, the USFS refused to consider in the FEIS the impacts of the alternatives on the forest's carbon stores and its ability to mitigate climate change. Rather, it provided the rationale for its decision in responses to comments.  AR12761, 12792-93 (FEIS appendix C).  The response stated that carbon sequestration and its relation to climate change are not covered in detail in the FEIS because of the scientific uncertainty of this issue.  AR12761.  Then, without addressing or distinguishing any of the articles cited in Plaintiffs' comments, the USFS explained that the Snow Basin project may positively influence the forest's carbon sequestration by improving the forest's resilience.  AR12792-93.

The USFS' rationale for not discussing the effects of the alternatives on the forest's carbon stores has been made.  It did not feel it necessary to discuss or distinguish any articles on the issue of logging and its effects on carbon sequestration.  The USFS is now barred from providing post-decision analysis attempting to discount and distinguish articles on this subject, essentially arguing no articles pertaining to this subject apply to the unique Snow Basin project area or the Project's "complex set of restoration, fuels

6 –MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXTRA-RECORD DECLARATIONS

reductions, and wood supply objectives." Darbyshire Decl., ¶¶ 15, 19. For this reason, the Darbyshire Declaration should be stricken.

Furthermore, Plaintiffs did not offer evidence of these articles to enter into a battle of the experts, which they know they would lose. They offered them to show the issue of the forest's carbon stores and its ability to mitigate climate change is significant enough to warrant discussion in the FEIS. A common reason for providing extra-record evidence in NEPA cases is to determine "whether the agency has considered all relevant factors and has explained its decision." *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450. Should this court require the USFS to discuss and analyze this issue, the supplemental EIS would be the appropriate place to discuss the applicability of these articles to the Snow Basin area.

## **CONCLUSION**

For the reasons provided herein, the Court should strike the Darby and White Declarations and Paragraphs 10-15 of the Hawkins Declaration.

Respectfully submitted this 24th day of May, 2013.

                                            s/ Tom Buchele
Tom Buchele (OSB # 081560)
Tel: (503) 768-6736
Email: tbuchele@lclark.edu

Attorney for Plaintiff League of Wilderness Defenders/Blue Mountains Biodiversity Project

                                            s/ Jennifer Schemm
Jennifer Schemm (OSB # 970086)
Tel: (541) 962-0896
Email: jschemm@eoni.com

Attorney for Plaintiff Hells Canyon Pres. Council

7 –MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXTRA-RECORD DECLARATIONS