IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEAGUE OF WILDERNESS
DEFENDERS/BLUE MOUNTAINS
BIODIVERSITY PROJECT, et al.,

        Plaintiffs,

   v.

KENT P. CONNAUGHTON, et al.,

        Defendants,

and

BAKER COUNTY, a political subdivision
of the State of Oregon, et al.,

        Defendant-Intervenors

No. 3:12-cv-02271-HZ

OPINION & ORDER

Tom Buchele
Earthrise Law Center
10015 SW Terwilliger Blvd.
Portland, OR 97219

    Attorney for Plaintiff League of Wilderness
    Defenders/Blue Mountain Biodiversity Project

Jennifer Schemm
Attorney at Law
602 O Ave.
La Grande, OR 97850

    Attorney for Plaintiff Hells Canyon
    Preservation Council

OPINION & ORDER- 1

Scott W. Horngren
American Forest Resource Council
5100 SW Macadam, Suite 350
Portland, OR 97239

Caroline Lobdell
Western Resources Legal Center
5100 SW Macadam, Suite 350
Portland, OR 97239

Attorneys for Defendant-Intervenors

HERNÁNDEZ, District Judge:

In July of 2013, this court denied plaintiffs' motion for preliminary injunction that sought to block commercial logging activities in the Wallowa Whitman National Forest ("Forest") under the Snow Basin Vegetation Management Project ("Project"). On appeal, the Ninth Circuit affirmed that decision in large part, but reversed on a narrow issue: that plaintiffs were entitled to an injunction based on the inadequacy of the Project's final environmental impact statement (FEIS) regarding elk habitat. League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton, 13-35653, 2014 WL 1814172 at *9 (9th Cir. May 8, 2014) (hereinafter "LOWD"). The problem with the FEIS is that it failed to address the impact of the subsequent withdrawal of the Forest's Travel Management Plan ("TMP"). The TMP had proposed to regulate off-road vehicle use and reduce the amount of roads in the Forest, and the FEIS analyzed the Project's impact on elk with reference to the TMP's mitigating effect on the Project's environmental harms. Plaintiffs argued the federal defendants must complete a supplemental EIS to show the environmental impact of the Project on elk and their habitat without the TMP, and the Ninth Circuit held that plaintiffs were likely to prevail on that claim. Id. at *3. The Ninth Circuit then found that the plaintiffs alleged an irreparable environmental

OPINION & ORDER - 2

injury, and that the balance of equities and the public interest supported granting an injunction in plaintiffs' favor. Id. at *6–*9.

The Ninth Circuit remanded the case to this court with instructions to "enter a preliminary injunction sufficient to protect the status quo while the [United States Forest Service] completes a supplemental environmental impact statement." Id. at *9. Following the Ninth Circuit's decision, this court adopted the parties' stipulated briefing schedule that included a hearing on the scope of the preliminary injunction to occur on July 21, 2014 (dkt #89). In the briefing about the scope of the preliminary injunction, however, it came to the court's attention that defendant-intervenor Boise Cascade intends to begin some limited road work and logging as soon as June 23 in a section of the Skull sale. Plaintiffs Motion ("Pl. Mtn.") at 1–2.

Plaintiffs now ask the court for interim preliminary relief barring all commercial logging activity on the Skull timber sale until this Court has heard the parties' arguments" at the July 21 hearing. Pl. Mtn. at 2. For the reasons stated, Plaintiffs' motion for interim preliminary relief is granted.

**STANDARDS**

A preliminary injunction is an extraordinary remedy that is never granted as matter of right. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). A party seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in plaintiff's favor, and that an injunction is in the public interest. Id., 555 U.S. 7, 20 (2008). The basic function of preliminary relief is to preserve the "status quo," or the last uncontested status that preceded the parties' controversy. Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir. 2006) (citations omitted).

## DISCUSSION

Plaintiffs allege, and Boise Cascade admits, that Boise Cascade intends to conduct some road reconstruction work and limited cable logging as soon as June 23 in a section of the Skull sale. Pl. Mtn. at 1–2; Defendant-Intervenor Brief ("Def.-Int. Br.") at 1. Plaintiffs ask the court for interim preliminary relief blocking Boise Cascade from logging the Skull timber sale before the court is able to fully address the parties' briefing and oral arguments at the July 21 hearing on the proper scope of the preliminary injunction. Pl. Mtn at 2.

The basic function of preliminary relief is to preserve the "status quo," or the last uncontested status that preceded the parties' controversy. Bazaar Del Mundo Inc., 448 F.3d at 1124 (citations omitted). Plaintiffs insist the court must block commercial logging on the Skull timber sale to preserve the status quo, which plaintiffs assert is the "no-logging status" that existed when they filed their lawsuit. Pl. Motion at. 7. Defendant-intervenors argue that the "status quo should be viewed as preventing irreparable harm to the elk population" until the court rules on the merits. Def.-Int. Br. at 4. Accordingly, the court should allow limited thinning and road rehabilitation because those activities will not irreparably harm the elk. Def.-Int. Br. at 4.

Where defendant-intervenors' argument falls short, however, is that it assumes the proposed logging of unit 8 in the Skull sale would be consistent with the Forest Service's course of action following completion of the Supplemental EIS. Logging even a few units before the Forest Service has a chance to correct the legal errors identified by the Ninth Circuit will necessarily limit USFS's available alternatives. During the NEPA process, federal regulations prohibit any interim action that tends to determine subsequent development or limit alternatives. See 40 C.F.R. § 1506.1(c); Northern Cheyenne Tribe v. Norton, 503 F.3d 836, 844 n.30 (9th Cir. 2007). The Forest Service may reaffirm its prior decision to conduct all of the Empire and Skull

OPINION & ORDER- 4

logging. But it may also decide that, in light of the withdrawal of the TMP, the defendant-intervenors need to do less logging to maintain more satisfactory elk cover. If the latter is true, and Boise Cascade and other intervenors are allowed to conduct even limited logging, the USFS cannot "put trees back on stumps." Pl. Mtn. at 10.

Moreover, the court followed the parties' lead in setting a briefing schedule that included a hearing on the scope of the preliminary injunction on July 21, 2014. The plaintiffs' final responsive briefing on the injunction's scope was not due until June 20. And yet Boise Cascade insists on moving forward with contested logging activities as soon as June 23. The court must have an opportunity to fully examine and consider the briefing and exhibits and to clarify its understanding of the issues at oral argument before any trees are cut down.

Ordinarily, the court must analyze a request for preliminary relief using the Winter factors. However, the Ninth Circuit has already found the plaintiffs showed a likelihood of success on the merits on one of its claims, that the plaintiffs will suffer irreparable harm, and that the balance of equities and the public interest favor the plaintiffs. LOWD, 2014 WL 1814172 at *9. Accordingly, the plaintiffs' motion for interim preliminary relief is granted, and defendants are enjoined from engaging in commercial logging activities, including harvesting, new or temporary road construction, or reconstruction of existing roads on the Skull sale until the court has an opportunity to rule on the proper scope of the preliminary injunction as required by the Ninth Circuit.

To be clear, the court is not ruling on the scope of the preliminary injunction at this time. After oral argument and adequate time to evaluate the parties' arguments, the court may lift its interim preliminary order blocking commercial logging on the Skull sale. But at the very least,

OPINION & ORDER - 5

the parties must give the court a fair opportunity to fully evaluate the briefing and oral argument without engaging in the contested logging activity that is at the heart of this dispute.

## ORDER

For the reasons stated, the court **GRANTS** Plaintiffs' motion for interim preliminary relief as follows:

It is hereby **ORDERED** that that there shall be no harvest of units in the Skull sale. It is further **ORDERED** that implementation of, and operations on, the Skull sale of the Snow Basin Project, including new road or temporary road construction, or reconstruction of existing roads, are enjoined.

Dated this 23 day of June, 2014.

*/s/ Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge

OPINION & ORDER- 6