IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEAGUE OF WILDERNESS
DEFENDERS/BLUE MOUNTAINS
BIODIVERSITY PROJECT, et al.,

    Plaintiffs,

    v.

JAMES M. PEÑA[1], et al.,

    Defendants,

and

BAKER COUNTY, a political subdivision
of the State of Oregon, et al.,

    Defendant-Intervenors.

No. 3:12-cv-02271-HZ

OPINION & ORDER

---

[1] James M. Peña has succeeded Defendant Kent P. Connaughton and is automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

1 – OPINION & ORDER

Tom C. Buchele
EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, OR 97219

    Attorney for Plaintiff League of Wilderness
    Defenders/Blue Mountains Biodiversity Project

Jennifer R. Schemm
Attorney at Law
602 O Ave.
La Grande, OR 97850

    Attorney for Plaintiff Hells Canyon
    Preservation Council

Sam Hirsch
Beverly F. Li
US DEPARTMENT OF JUSTICE
Environmental & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044

    Attorneys for Federal Defendants James Pena,
    United States Forest Service, United States Fish
    and Wildlife Service, and Gary Miller

Scott W. Horngren
AMERICAN FOREST RESOURCE COUNCIL
5100 SW Macadam, Suite 350
Portland, OR 97239

Caroline Lobdell
WESTERN RESOURCES LEGAL CENTER
5100 SW Macadam, Suite 350
Portland, OR 97239

    Attorneys for Defendant-Intervenors

HERNÁNDEZ, District Judge:

    On December 9, 2014, this Court issued an Opinion and Order that granted in part Plaintiffs League of Wilderness Defenders/Blue Mountains Diversity Project and Hells Canyon

Preservation Council's (collectively, "Plaintiffs") motion for summary judgment against the United States Forest Service and its Regional Forester for the Pacific Northwest Region (collectively, "Defendants").[2] League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton, No. 3:12-CV-02271-HZ, 2014 WL 6977611, at *1 (D. Or. Dec. 9, 2014). The Court held that the Forest Service acted arbitrarily and capriciously, violating the Administrative Procedure Act ("APA") by approving the Snow Basin Vegetation Management Project ("Project") in eastern Oregon through the issuance of its Record of Decision ("ROD") and underlying Final Environmental Impact Statement ("FEIS").

The Court requested further briefing from the parties regarding the proper scope of relief. Plaintiffs urge the Court to vacate the ROD, the FEIS, and three timber sales contracts approved by the Forest Service pursuant to the ROD. Defendants and Intervenors[3] agree that the ROD must be vacated; however, they oppose vacatur of the FEIS and the timber sales contracts, arguing that remand without vacatur is a sufficient remedy. For the reasons that follow, the Court vacates the ROD and the FEIS, but not the timber sales contracts.

## BACKGROUND

The Forest Service issued a FEIS and ROD in March 2012, establishing the Project's plan for logging a nearly 29,000 acre portion of the Wallowa Whitman National Forest ("WWNF") in northeastern Oregon. In order to implement the Project, the Forest Service sought to amend the "Eastside Screens," a set of interim riparian, ecosystem, and wildlife standards for

---

[2] Plaintiffs' Complaint also named as defendants the United States Fish and Wildlife Service and Gary Miller, Field Supervisor, United States Fish and Wildlife Service, in his official capacity. Plaintiffs' claims against those defendants have been dismissed. See Order, Dec. 9, 2014, [140].
[3] The intervenors in this case are Baker County, Union County, Boise Cascade Wood Products, American Forest Resource Council, Chary Mires, and Oregon Small Woodlands Association (collectively, "Intervenors"). See Order, March 14, 2013, [22].

3 – OPINION & ORDER

timber sales applicable to public lands east of the Cascade Mountains that, in essence, prohibit the harvest of old-growth trees.

Plaintiffs challenged the legality of the FEIS and the ROD. The Court agreed that the Forest Service's FEIS and ROD violated the National Environmental Policy Act, 42 U.S.C. §§ 4321, et seq. ("NEPA"), and the National Forest Management Act, 16 U.S.C. §§ 1601, et seq. ("NFMA"), in the following ways: (1) insufficiently analyzing the cumulative impacts of its proposed action; (2) failing to prepare a supplemental environmental impact statement to show the environmental impact of the Project on elk and their habitat; (4) failing to disclose and include documents critical to the Forest Service's analysis in the FEIS; (5) failing to ensure the scientific integrity of the FEIS regarding the categorization of a specific kind of forest; and (6) failing to articulate a rational connection between the characteristics of the Project area and the choice to adopt site-specific, rather than forest-wide, amendments.

## STANDARDS

The APA provides that the "reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A) & (D). When a court determines that an agency's decision was unlawful under the APA, vacatur is the standard remedy. Se. Alaska Conservation Council v. U.S. Army Corps of Engineers, 486 F.3d 638, 654 (9th Cir. 2007) ("Under the APA, the normal remedy for an unlawful agency action is to 'set aside' the action. 5 U.S.C. § 706(2). In other words, a court should 'vacate the agency's action and remand to the agency to act in compliance with its statutory obligations.'" (citation omitted)), rev'd and remanded sub nom. Coeur Alaska, Inc. v. Se. Alaska Conservation Council, 557 U.S. 261 (2009); Alsea Valley

4 – OPINION & ORDER

Alliance v. Dep't of Commerce, 358 F.3d 1181, 1185 (9th Cir. 2004) ("Although not without exception, vacatur of an unlawful agency rule normally accompanies a remand."); Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1405 (9th Cir. 1995) ("Ordinarily when a regulation is not promulgated in compliance with the APA, the regulation is invalid."); accord Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1084 (D.C. Cir. 2001) (relief for APA error "normally will be a vacatur of the agency's order"); Reed v. Salazar, 744 F. Supp. 2d 98, 119 (D.D.C. 2010) ("default remedy" is to set aside agency action taken in violation of NEPA).

Although the Supreme Court has cautioned courts against granting injunctive relief as a matter of course in NEPA cases, it did not question the use of vacatur as a standard remedy. See Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 165 (2010) (urging courts to employ partial or complete vacatur before considering the "drastic and extraordinary" relief of injunction); Sierra Club v. Van Antwerp, 719 F. Supp. 2d 77, 78 (D.D.C. 2010) ("While the U.S. Supreme Court made clear in Monsanto that there is no presumption to other injunctive relief, … both the Supreme Court and the D.C. Circuit Court have held that remand, along with vacatur, is the presumptively appropriate remedy for a violation of the APA." (citation omitted)).

Vacatur is not, however, required. California Communities Against Toxics v. U.S. E.P.A., 688 F.3d 989, 992 (9th Cir. 2012). When equity demands, a court may elect not to vacate an illegal agency decision on remand. See Humane Soc'y v. Locke, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010) ("In rare circumstances, when we deem it advisable that the agency action remain in force until the action can be reconsidered or replaced, we will remand without vacating the agency's action."); Ctr. For Food Safety v. Vilsack, 734 F. Supp. 2d 948, 951 (N.D. Cal. 2010) ("[T]he Ninth Circuit has only found remand without vacatur warranted by equity concerns in limited circumstances, namely serious irreparable environmental injury.").

5 – OPINION & ORDER

To determine whether vacatur would be appropriate in a given case, the Ninth Circuit adopted the standard described in Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n, 988 F.2d 146 (D.C. Cir. 1993). Under the Allied-Signal standard, "[w]hether the agency action should be vacated depends on how serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed.'" California Communities Against Toxics, 688 F.3d at 992. That is, courts may decline to vacate agency decisions when vacatur would cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error.

## DISCUSSION

I.    Final Agency Action

As an initial matter, the parties dispute whether the FEIS is a "final agency action" subject to judicial review under the APA. Defendants and Intervenors contend that only the ROD, and not the FEIS, is a final agency action subject to this Court's review. The Court disagrees.

Defendants argue that the issuance of the ROD is the "consummation of the decision process—and thus the final agency action" in the context of NEPA and, therefore, the underlying FEIS is not subject to judicial review. Defs.' Br. 9. Neither of the two cases cited by Defendants supports their argument.

The first case Defendants cite, Sierra Club v. U.S. Dep't of Energy, 825 F. Supp. 2d 142 (D.D.C. 2011), stands for the proposition that a FEIS was not the final agency action when the agency indicated that a ROD regarding the topic of the FEIS was forthcoming. Unlike Sierra Club, here the Forest Service issued the ROD finalizing the FEIS. Therefore, both documents became final agency actions.

The other case cited by Defendants supports Plaintiff's position. In Oregon Natural Desert Ass'n v. Bureau of Land Mgmt., 625 F.3d 1092, 1118 (9th Cir. 2010), the court held that "[o]nce an EIS's analysis has been solidified in a ROD, an agency has taken final agency action." Defendants interpret the Ninth Circuit's statement to mean that a FEIS, as an independent document, is not subject to judicial review. However, Defendants fail to mention that Oregon Natural Desert Ass'n goes on to cite an additional case from the Ninth Circuit as well as cases from four other Circuit Courts of Appeals that make clear that an EIS, independent of a ROD, is a final agency action. See, e.g., Laub v. U.S. Dep't of the Interior, 342 F.3d 1080, 1087-91 (9th Cir. 2003) (holding that the ROD and EIS for a program were final agency action); Ouachita Watch League v. Jacobs, 463 F.3d 1163, 1173 (11th Cir. 2006) (holding it "well settled that 'a final EIS or the record of decision issued thereon constitute[ ] final agency action.'") (quoting Sw. Williamson County Cmty. Ass'n v. Slater, 173 F.3d 1033, 1036 (6th Cir. 1999)); Sierra Club v. U.S. Army Corps of Engineers, 446 F.3d 808, 815 (8th Cir. 2006) (noting that "[t]he Supreme Court has strongly signaled that an agency's decision to issue . . . an environmental impact statement is a 'final agency action' permitting immediate judicial review under NEPA") (citing Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 737 (1998)); Utah v. U.S. Dep't of the Interior, 210 F.3d 1193, 1196 (10th Cir. 2000) (holding that "judicial review of final agency action under the Administrative Procedure Act . . . provides the proper procedure to challenge the sufficiency of an EIS"); Sierra Club v. Slater, 120 F.3d 623, 631 (6th Cir. 1997) (holding that "it appears well-established that a final EIS . . . constitute[s] the 'final agency action' for purposes of the APA" and collecting cases).

In sum, Oregon Natural Desert Ass'n and the cases it cites make clear that once an ROD has been issued, both the FEIS and the ROD are final agency actions subject to judicial review.

II.  Application of Allied-Signal Factors

This Court found a combination of significant substantive and procedural flaws in the Forest Service's ROD and FEIS. Taken together, these flaws seriously undermine the Forest Service's ability to fulfill the purposes of NEPA and the NFMA. Applying the Allied-Signal test, the Court evaluates the seriousness of the agency's errors "(and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." Allied-Signal, Inc, 988 F.2d at 150-51.

a.  Seriousness of Agency's Errors

Defendants do not address the seriousness of the Forest Service's errors in the ROD and FEIS. However, Intervenors characterize the errors as merely "legal deficiencies" that do not raise "serious doubts that the 'agency chose correctly' or that the agency made an impermissible substantive decision to reduce fire and improve forest health." Intvs.' Br. 6 (quoting Allied-Signal, 988 F.2d at 150). The Court disagrees with Intervenors' characterization.

The Court's summary judgment opinion detailed the substantive and procedural flaws in the ROD and FEIS; therefore, the Court does not repeat the analysis here. See League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton, No. 3:12-CV-02271-HZ, 2014 WL 6977611, at *1 (D. Or. Dec. 9, 2014) for the full analysis. However, the Court notes a few examples that demonstrate the gravity of the Forest Service's errors.

The Forest Service conducted an inadequate cumulative impacts analysis. In developing the Project, the Forest Service failed to adequately consider the cumulative impacts of past amendments to the Eastside Screens within the WWNF. Furthermore, the Forest Service failed to explain its choice of geographic scope used to analyze the Project's cumulative impacts on the

pileated woodpecker and American marten, which are management indicator species for old-growth habitat.

In a recent opinion in this District, Judge Simon addressed the importance of an adequate cumulative impacts analysis in fulfilling the purpose of NEPA:

> NEPA "declares a broad national commitment to protecting and promoting environmental quality," a commitment it furthers by forcing agencies to consider the environmental consequences of their actions. Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 348-50 (1989). Cumulative impacts analysis is at the heart of this process, and a failure to analyze cumulative impacts will rarely—if ever—be so minor an error as to satisfy this first Allied-Signal factor.

League of Wilderness Defenders/Blue Mountains Biodiversity Project v. U.S. Forest Serv., No. 3:10-cv-01397-SI (D. Or. Dec. 10, 2012) [107] ((hereinafter "LOWD, slip op."). While Judge Simon's unpublished opinion is not binding upon this Court, the Court agrees with his assessment of the importance of an adequate cumulative impacts analysis to the NEPA process.

Similarly, the Forest Service's failure to include documents critical to its analysis in the FEIS and its failure to prepare a new or supplemental EIS for the Project in light of significant reworking of its analysis makes vacatur necessary. The Forest Service violated NEPA by failing to include certain draft Specialist Reports in the appendices of the draft EIS, failing to make the draft Specialist Reports publicly available during the comment period, failing to ever disclose the draft Specialist Reports, and failing to disclose the final Specialist Reports until three weeks before the due date for Plaintiffs' administrative appeal. As the Court previously noted, "[t]he Forest Service's actions resulted in a final EIS that precluded meaningful analysis regarding project impacts on the goshawk, American marten, and pileated woodpecker"; "the Forest Service insulated a portion of the Project from public scrutiny and deprived itself of public input"; and "[t]he consequences of this omission are ongoing." League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton, No. 3:12-CV-02271-HZ, 2014

9 – OPINION & ORDER

WL 6977611, at *20 (D. Or. Dec. 9, 2014). The Forest Service's behavior regarding the Specialist Reports impacted the integrity of the ROD and FEIS. This error is serious.

The remainder of the Forest Service's errors, such as failing to ensure the scientific integrity of the FEIS and failing to adequately justify the choice to adopt site-specific amendments, render this Court unable to determine whether the "agency chose correctly." See Allied-Signal, 988 F.2d at 150. Accordingly, the Forest Service's errors in this case weigh in favor of vacatur.

  b. Disruptive Consequences

Defendants argue that vacatur of the FEIS will "disrupt future agency decision-making and improperly involve the Court in determining how the Forest Service is to comply with the law in the future" because the Forest Service will be obligated to prepare a "wholly new EIS" rather than using its judgment on how to proceed. Defs.' Br. 5. While the Court is sympathetic to the agency's wish to exercise its own judgment in how to proceed, the Court finds that the obligation to prepare a new EIS is not an unreasonable inconvenience or harm, but rather the logical result of vacating a legally deficient FEIS. In other words, Defendants' argument that vacatur will have disruptive consequences because the agency will lose its discretion to decide whether to set aside the FEIS is unpersuasive. As Judge Simon noted in his opinion, "[w]henever an agency is told it cannot do what it was planning to do, it will be inconvenienced and its efforts will be delayed." LOWD, slip op. at 8.

Defendants cite many cases in support of their argument that a court is not "to substitute its judgment for that of the agency" by dictating how the agency should comply with the law in the future. See, e.g., Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971). However, the principle from Overton Park and the other cases cited by Defendants is that, when

conducting arbitrary and capricious review, the court is not empowered to substitute its judgment for that of the agency. Here, the Court already found that the Forest Service's actions were arbitrary and capricious. The issue now is the proper scope of the remedy. Vacating the FEIS and ROD does not dictate how the agency should comply with the law in the future. Rather, it leaves to the agency the discretion of how to appropriately proceed after setting aside the arbitrary and capricious agency actions.

Intervenors argue that vacatur will "significantly set back forest health treatments" because it will "delay the Forest Service from reducing fuels to avoid losing the entire forest to wildfire." Intvs.' Br. 7. The Ninth Circuit's earlier ruling on a preliminary injunction in this case is instructive:

> Even though fire and insect risks are to a degree speculative, mitigating such risks is a valid public interest. See McNair, 537 F.3d at 1005 (citing Wildwest Inst. v. Bull, 472 F.3d 587, 592 (9th Cir. 2006)). We have given this claim great weight when the risk is imminent or the danger has begun. See Alpine Lakes Prot. Soc'y v. Schlapfer, 518 F.2d 1089, 1090 (9th Cir. 1975) (per curiam) (holding that an injunction was not in the public interest because many trees at issue were already infested by insects, which made large-scale spreading across other lands inevitable absent logging). That is not the case here. The FEIS states that, if no action is taken, "[f]ire suppression can be expected to continue and be highly successful," and notes the possibility of "periodic insect outbreaks." Without evidence of an imminent threat, we cannot say that the inability to mitigate such risks for a temporary period outweighs the public's interest in maintaining elk habitat and mature trees in the Forest.

League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton, 752 F.3d 755, 766 (9th Cir. 2014). This Court acknowledges that the "temporary period" contemplated by the Ninth Circuit is perhaps shorter than the period of time it could take the Forest Service to complete a new FEIS. Nevertheless, the disruption to the agency's plans that will result from vacatur of the FEIS is outweighed by the benefit of ensuring that a legal and adequate FEIS and ROD are in place before an irreversible logging project begins.

Finally, Intervenors assert that the Court must consider the disruptive consequences of vacating the FEIS on job creation in the timber mills. The Court again refers to the Ninth Circuit's prior decision in this case, which stated that although job creation was relevant to the public interest, a temporary delay of the economic benefits of jobs was outweighed by threatened irreparable injury. Id.

    c. Balancing the Allied-Signal factors

After examining "how serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed," California Communities Against Toxics, 688 F.3d at 992 (quoting Allied Signal, 988 F.2d at 150-51), the Court finds that Defendants and Intervenors have not made a sufficient showing to warrant deviation from the general rule that unlawful agency actions are set aside and remanded.

Only in limited circumstances has the Ninth Circuit declined to vacate agency decisions that did not comply with NEPA. LOWD, slip op. at 5. In California Communities Against Toxics, the Ninth Circuit held that the EPA made both procedural and substantive errors in its rulemaking process regarding the construction of a new power plant in California. The Ninth Circuit believed that vacating the EPA's rule in the interim would result in significant public harms: the region was in dire need of more energy sources, and "halting the billion-dollar venture employing 350 workers" would be "economically disastrous." Id. at *3. Applying the Allied-Signal standard, the Ninth Circuit declined to vacate the agency decision and allowed construction to go forward while the EPA corrected the errors on remand, although the court made clear that the power plant could not commence operation until the new, valid EPA rule was in place.

12 – OPINION & ORDER

The Allied-Signal approach accords with earlier Ninth Circuit cases as well. In Idaho Farm Bureau Fed'n v. Babbitt, the Ninth Circuit held that the U.S. Fish and Wildlife Service, in listing a snail species as endangered, technically erred in not making a provisional report available to the public before the close of the comment period. 58 F.3d 1392, 1402-04 (9th Cir. 1995). However, the Ninth Circuit determined that vacating the agency's rule was not appropriate because that could result in "the potential extinction of an animal species." Id. at 1405. The Ninth Circuit determined that the procedural error was unlikely to alter the agency's final decision, while vacating the rule in the interim could have devastating consequences.

Similarly, in Western Oil & Gas v. U.S. Environmental Protection Agency, 633 F.2d 803 (9th Cir. 1980), the Ninth Circuit did not vacate pollution reduction designations under the Clean Air Act because doing so would have thwarted "the operation of the Clean Air Act in the State of California during the time the deliberative process is reenacted." Id. at 813. In addition, the plaintiffs in Western Oil & Gas, who had challenged the EPA's rulemaking, agreed with the court that the existing designations should remain in place during remand. Id. at 812.

As Judge Simon noted, "these cases are noteworthy for the significant disparity between the agencies' relatively minor errors, on the one hand, and the damage that vacatur could cause the very purpose of the underlying statutes, on the other." LOWD, slip op. at 6. This disparity distinguishes these cases from the one presently before the Court. Here, the agency's errors are not minor. Furthermore, Defendants and Intervenors fail to persuade the Court that vacatur could cause damage to the very purpose of the underlying statutes, NEPA and the NFMA. Instead, vacatur allows the Forest Service to fully and meaningfully address the substantive and procedural flaws detailed in the Court's summary judgment opinion.

III.   Timber Sale Contracts

The Forest Service has voluntarily suspended three timber sales contracts that were awarded to implement the Project. Johnson Decl. ¶ 2.[4] The parties agree that the timber sales cannot proceed until the Forest Service corrects the errors in the ROD and the FEIS identified by this Court. Despite the necessity of vacatur for both the ROD and the FEIS, the Court concludes that it is not necessary to judicially intervene regarding the timber sales contracts in order for the Forest Service to comply with this Court's summary judgment opinion.

Plaintiffs urge the Court to vacate, enjoin, or judicially suspend the contracts. Plaintiffs argue that the timber sales contracts are the product of illegal agency action and, because the agency promulgated the erroneous action in the first place, Plaintiffs should not be required to depend on the Forest Service to maintain its voluntary suspensions.

According to Defendants and Intervenors, the question of how to administer the contracts in the wake of this Court's summary judgment opinion is one that should be left to the agency's discretion. Defendants submit the declaration of the WWNF Timber Contracting Officer/Program Manager to prove that the Forest Service has now suspended all three contracts and that "no work on the projects can proceed until the WWNF issues a new decision" on the Project and the Forest Service lifts the suspensions. Id. ¶¶ 3-4. The contracts provide that the Forest Service has the authority to modify or cancel the contracts as needed to account for the new decision. Id. ¶ 5. Specifically, the contracts state that the "Contracting Officer may, by written order, delay or interrupt authorized operations under this contract or . . . modify this

---

[4] In 2012, the Forest Service awarded the Puzzle Timber Sale to Boise Cascade Wood Products. Johnson Decl. ¶ 2. In 2013, the Forest Service awarded the Empire Timber Sale to Dodge Logging, and the Skull Timber Sale to Boise Cascade Wood Products. Id. The Empire and Skull Timber Sale contracts were suspended on August 13, 2014, and the Puzzle Timber Sale contract was suspended on December 15, 2014. Id. ¶ 3.

contract in whole or in part" in order to "ensure consistency with the land and resource management plans or other documents prepared pursuant to the National Environmental Policy Act of 1969, 42 U.S.C. 4321-4347." Id.

The parties cite numerous cases in support of their positions. Taken together, the cases instruct this Court that the scope of the remedy as to the timber sales contracts is an equitable decision, subject to this Court's discretion. While the Court could vacate, enjoin, or suspend the contracts, it is not required to do so. In this regard, the Ninth Circuit's decision in Northern Cheyenne Tribe v. Hodel, 851 F.2d 1152 (9th Cir.1988), is instructive. There, the plaintiffs argued that coal leases issued without proper NEPA analysis should be voided, and not merely suspended, to avoid the new NEPA analysis being tainted by "bureaucratic commitment" to the leases. The Court disagreed, finding:

> [T]he difference between voiding the leases and suspending them does not create any major difference in the process that must now go on. We see no reason to suppose that the Secretary will feel greater commitment to the original project if the leases are not voided but held in abeyance until a new evaluation is made.... We assume the Secretary will comply with the law.

Id. at 1157. Similarly here, whether the contracts remain in place here or are vacated during the remand is not likely to alter the Forest Service's decisions on how to proceed in light of the vacated ROD and FEIS. The Forest Service must comply with the law moving forward and the Court assumes it will do so, regardless of whether or not the contracts are judicially or voluntarily suspended. The Court does not need to interfere with the Forest Service's voluntary suspension of the contracts at this point. See also, Conner v. Burford, 848 F.2d 1441, 1461 (9th Cir. 1988) (holding that certain gas leases need not be invalidated, even though those leases had been sold in violation of NEPA, because it was sufficient to enjoin "any surface-disturbing activity to occur on any of the leases until they have fully complied with NEPA" and to instruct

15 – OPINION & ORDER

that "future environmental analysis by the federal agencies shall <u>not</u> take into consideration the commitments embodied in the ... leases already sold.") (emphasis in original); <u>Forelaws on Board v. Johnson</u>, 743 F.2d 677 (9th Cir. 1984) (finding that even though an EIS should have been prepared prior to the offer of contracts, the court was not required to suspend the contracts).

In a more recent case from the Eastern District of California, <u>Sequoia Forestkeeper & Earth Island Inst. v. U.S. Forest Serv.</u>, No. CV F 07-1690 LJO DLB, 2008 WL 5054100 (E.D. Cal. Nov. 19, 2008), the plaintiffs challenged, among other things, the Forest Service's failure to prepare a FEIS for a logging project. While litigation was pending, the Forest Service withdrew the challenged administrative action and suspended the timber sale contract awarded pursuant to the proposed project plan. <u>Id.</u> at *1. When the plaintiffs nevertheless challenged the timber sale contract, the court held that it was not necessary to vacate the contract because the plaintiffs' interests were "protected because the timber sale contract is suspended and cannot be enforced absent NEPA compliance." <u>Id.</u> at *9.

In <u>Sequoia Forestkeeper</u>, as opposed to the present case, the Forest Service made clear that any new NEPA analysis would "begin from scratch" and not be supplemental to any previous environmental analysis. <u>Id.</u> at *9. Here, Plaintiffs argue that "the Forest Service has made no such concession and may simply do the supplemental analysis without any scoping." Pls.' Memo. 26. However, given this Court's ruling vacating the FEIS and the ROD, the Forest Service will be required to create a new FEIS if it wants to proceed with the timber sales contracts. Therefore, Plaintiffs' concerns should be alleviated. The additional cases cited by Plaintiffs merely support the proposition that this Court could set aside the contracts, not that it is required to. <u>See, e.g.</u>, <u>Friends of the Earth v. Hall</u>, 693 F. Supp. 904, 912 (W.D. Wa. 1988); <u>Pit</u>

River Tribe v. U.S. Forest Serv., 615 F.3d 1069, 1080-81 (9th Cir. 2010) ("Our courts have long held that relief for a NEPA violation is subject to equity principles.").

Plaintiffs' injuries are remedied by the vacatur of the ROD and the FEIS. There is no current injury stemming from the continued existence of the suspended contracts and, as discussed above, the contracts cannot be reinstated until the Forest Service addresses the errors identified by this Court. The decision of how to proceed with the contracts in light of this Court's vacatur of the ROD and the FEIS is a decision best left to the discretion of the agency.

## CONCLUSION

This case is remanded to the Forest Service for further proceedings consistent with this Opinion & Order, and the Project ROD and FEIS are vacated.

Plaintiffs shall prepare an appropriate judgment consistent with this Opinion. Plaintiffs may incorporate the appellate costs taxed by this Court on September 2, 2014 [134] in that judgment. After conferring with counsel for Defendants and Intervenors, Plaintiffs shall submit the proposed judgment to the Court for review within 14 days of the date below. If the parties cannot agree on a judgment, Plaintiffs should notify the Court, which will then schedule a telephone conference.

IT IS SO ORDERED.

Dated this \_\_6\_\_ day of \_\_April\_\_, 2015.

_____
MARCO A. HERNÁNDEZ
United States District Judge

17 – OPINION & ORDER